UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

ST. MARK'S LUTHERAN HOME, 01 CIV 1034 JEL/JGL

Plaintiff,

v. **ORDER**

TOMMY THOMPSON, in his capacity as Secretary of the United States Department of Health and Human Services, THOMAS SCULLY, in his capacity as Administrator of the Health Care Financing Administration (HCFA), DOROTHY BURK COLLINS, as the Regional Administrator of Region V of HCFA, and BLUE CROSS/BLUE SHIELD OF NORTH DAKOTA (d/b/a Noridian), in its capacity as Fiscal Intermediary,

Defendants.

---

MARK R. WHITMORE, Bassford, Lockhart, Truesdell & Briggs, P.A., on behalf of the plaintiff.

PATRICIA R. CANGEMI, Assistant United States Attorney, on behalf of the defendant.

---

This matter came on for hearing before the Court on August 19, 2002 upon the Defendants' Motion to Dismiss all Defendants Except Tommy Thompson and upon the parties' cross-motions for summary judgment. For the reasons stated herein, the Court will Grant the Defendants' Motion to Dismiss all Defendants Except Tommy Thompson. The Court will grant the Defendants' Motion for Summary Judgment in part and the Plaintiff's Motion for Summary Judgment in part.

## I. BACKGROUND

The case involves the reimbursement of blood glucose monitoring ("BGM") tests. The plaintiff, St. Mark's Lutheran Home ("the Lutheran Home"), is a skilled nursing facility ("SNF") that provides various medical services for its residents, including BGM tests. The Secretary of the United States Department of Health and Human Services ("the Secretary") has delegated the administration of the Medicare program to the Centers for Medicare and Medicaid Services ("CMS"), formerly known as the Health Care Financing Administration ("HCFA"). CMS contracts with private companies, known as fiscal intermediaries, to process the claims. Blue Cross Minnesota was the

FILED OCT 02 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED OCT 02 2002
DEPUTY CLERK'S INITIALS

intermediary to which Minnesota providers, such as the Lutheran Home, submitted Medicare claims until August 1, 1999, at which time Noridian became the intermediary.

Relevant legislation and reimbursement policies for BGM tests have been in a complex state of flux in recent years. Prior to June 7, 2000, each intermediary made its own determination as to whether BGM tests were reimbursable because a national policy did not exist. Blue Cross, and later Noridian, took the position that BGM tests were "routine" and therefore not reimbursable. As a result, submitted claims were returned unprocessed to providers. In an effort to obtain reimbursement of its claims, the Lutheran Home hired James Giger, a billing consultant, to work with on its behalf. On June 7, 2000, the Secretary instructed intermediaries to process BGM tests, but to reimburse on a cost, rather than a fee schedule, basis. On December 5, 2000, the Lutheran Home submitted claims incurred between October 1, 1998 and June 6, 2000. Noridian returned the claims unprocessed and without administrative review rights. On April 1, 2001, the Secretary instituted a policy of reimbursement on a fee schedule basis, but added a requirement that each BGM test must be ordered by and reported to a physician in order to be considered "reasonable and necessary," and therefore reimbursable.

The Lutheran Home argues that these policies are contrary to existing legislation and reflect an ongoing effort to avoid reimbursing providers for BGM tests. Specifically, the Lutheran Home challenges the Secretary's policy of reimbursing on a cost basis and the requirement that each BGM test must be ordered by and reported to a physician. It further argues that the claims it submitted on December 5, 2000 should have been reimbursed and should not have been returned without administrative review rights. According to the Lutheran Home, it has not filed any additional claims for reimbursement with Noridian for several reasons. First, it disputes and is not in compliance with all requirements related to these methods of reimbursement. Second, it claims that it was told by Blue Cross Minnesota that the filing of BGM test claims would be considered fraudulent. Thus, the Lutheran Home anticipates fraud or abuse charges for filing.

This action was brought, therefore, seeking a declaration regarding the proper method of reimbursement. In addition, the Lutheran Home requests an extension for filing its now untimely claims, arguing that its failure to timely file was caused by an error or misrepresentation of Noridian,

CMS, or the Secretary. The Secretary argues that the Lutheran Home has not exhausted its administrative remedies as to the claims it never submitted for reimbursement and that the Court therefore lacks subject matter jurisdiction as to those claims. As to the claims the Lutheran Home submitted on December 5, 2000, the Secretary argues that the Court's jurisdiction is limited to ordering the Secretary to process the claims. On the merits, the Secretary argues that its reimbursement policies are proper and that the Lutheran Home is not entitled to an extension for filing its claims.

## II. DISCUSSION

### A. Summary Judgment Standard

The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or are based on undisputed facts. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986); Hegg v. United States, 817 F.2d 1328, 1331 (8th Cir. 1987). Summary judgment is proper, however, only if examination of the evidence in a light most favorable to the non-moving party reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Fed. R. Civ. P. 56(c).

### B. Defendants' Motion to Dismiss all Defendant Except Tommy Thompson

The Secretary argues that he is the only proper party defendant and that all other parties should be dismissed. The Lutheran Home has agreed to dismiss Dorothy Burk Collins ("Collins"), as the Regional Administrator of the Health Care Financing Administration ("HCFA"), but argues that the other parties are necessary. In addition to Tommy Thompson, in his capacity as Secretary of the Department of Health and Human Services ("HHS"), and Collins, the named defendants include Thomas Scully, in his capacity as the Administrator of the Health Care Financing Administration ("HCFA"), and Noridian, in its capacity as fiscal intermediary.

Fiscal intermediaries are agents of the Secretary and are bound by a judgment against the Secretary, making the Secretary the proper party of interest in an action. DeWall Enter., Inc. v. Thompson, 206 F. Supp.2d 992, 993, n.1 (D. Neb. 2002); 42 C.F.R. § 421.5(b). As the Secretary argues, the other named defendants are bound by the Secretary's directives, which would include

adhering to a court order. Accordingly, the Court will dismiss all defendants, except Tommy Thompson, without prejudice.

### C. Cross Motions for Summary Judgment

#### (1). Jurisdiction Over Unfiled Claims

The Secretary argues that the Court lacks subject matter jurisdiction over the Lutheran Home's unfiled claims. There are two elements to obtaining judicial review of a claim arising under the Medicare Act: 1) an unwaivable requirement of presentment to the Secretary; and 2) a waivable requirement that the claimant must have exhausted its administrative remedies. 42 U.S.C. § 405(g). 42 U.S.C. § 405(h) requires exhaustion of administrative remedies as a prerequisite to federal court jurisdiction, unless application of §405(h) would result in no review at all. Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 19 (2000) (requiring exhaustion where a nursing home with deficiencies could test the lawfulness of regulations by refusing to submit a required corrective plan and incurring a minor penalty, such as the denial of payments, incurring a fine, or being subject to state monitoring); see Trade Around the World of Pennsylvania v. Shalala, 145 F. Supp.2d 653, 662 (W.D. Pa. 2001).

The Lutheran Home argues that it was unable to file because it could have been charged with fraud or abuse for doing so and that, as a result, this is a situation pursuant to Illinois Council where requiring it to file and exhaust administrative remedies would result in no review at all. In making this determination, it is appropriate to consider the severity of the penalty incurred by a violation and the plaintiff's access to administrative review. American Lithotripsy Soc. v. Urology Soc. of America, No. 01-CV-1812, 2002 WL 1831986, at *5 (D. D.C. July 12, 2002) (citing Illinois Council, 529 U.S. at 22); see, e.g., National Ass'n of Psychiatric Health Sys. v. Shalala, 120 F. Supp.2d 33 (D. D.C. 2000) (holding that the plaintiff did not have the option of violating a rule and incurring a minor penalty to receive an administrative hearing before proceeding to federal court because the penalty for violating rule involved termination from the Medicare program).

The Court will first consider the severity of the penalty. While the threat of fraud or abuse charges is undoubtedly troubling for the Lutheran Home, the Court finds that this threat is somewhat remote. At oral argument, the Secretary "invited" the Lutheran Home to submit all of its claims for

reimbursement. The Secretary stated that, assuming that the Lutheran Home's claims are made in good faith and are not fabricated, the Lutheran Home will not be charged with fraud or abuse for filing. This is supported by the fact that the Lutheran Home was not charged with fraud or abuse for filing claims on December 5, 2000. Nor is the Court convinced that the threat of fraud or abuse charges rises to the level necessary, pursuant to Illinois Council, to excuse the filing and channeling requirements.

The Lutheran Home also complains about the delay involved in seeking administrative review. However, this does not appear to be a situation where requiring exhaustion will result in enormous fines or financial ruin, such as to amount to the equivalent of denying judicial review. C.f. American Lithotripsy Soc., No. 01-CV-1812, 2002 WL 1831986, at *5 (exhaustion not required where forcing the plaintiff to violate a referral requirement and incur a $15,000 penalty per bill could subject the plaintiff to financial ruin, criminal penalties, and exclusion from participation in any federal health care program). The rationale behind the application of 405(h) is that "it assures the agency a greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts applying 'ripeness and exhaustion' exceptions case by case. But this assurance comes at a price, namely, occasional individual, delay-related hardship." Illinois Council, 529 U.S. at 13; Great Rivers Home Care, Inc. v. Thompson, 170 F. Supp.2d 900, 906 (E.D. Mo. 2001).

The Court will next consider the Lutheran Home's access to administrative review. The Lutheran Home's skepticism that its claims would be granted administrative review rights is understandable, given the lack of administrative rights afforded the claims submitted on December 5, 2000. However, at oral argument, the Secretary guaranteed that the Lutheran Home would be granted access to the administrative review process after the claims are processed. It seems highly unlikely that the Secretary will process and reimburse the Lutheran Home's claims using the methodology desired by the Lutheran Home, and some of its claims probably will be denied as untimely. However, after the claims are filed, processed, and all administrative rights are exhausted (or waived by the Secretary), the Lutheran Home will have access to judicial review. At a minimum, the matter must be presented to the agency prior to review in federal court. Illinois Council, 529 U.S.

at 23-24. The Court finds, therefore, that this not a situation where requiring the Lutheran Home to file and exhaust administrative remedies is the equivalent of denying it judicial review.

**(2). Jurisdiction Over Filed Claims**

The Secretary concedes that the Court has jurisdiction over the Lutheran Home's claims dated October 1, 1998 to June 6, 2000 that the Lutheran Home filed, but which Noridian returned unprocessed and without administrative review rights. The Secretary has directed Noridian to process the claims if the Lutheran Home resubmits them, essentially conceding that they should not have been rejected as "routine" under the Medicare Act. The Secretary also guarantees administrative rights in the event that they are resubmitted. However, the Lutheran Home contends that, in addition to ordering the Secretary to process the claims, the Court should declare the proper method for reimbursement. The Court finds that it would be premature to address the merits of the Lutheran Home's claims and that they should be channeled through the agency. If, upon exhaustion of the administrative process, the claims have not been reimbursed to the Lutheran Home's satisfaction, the Lutheran Home then will have access to judicial review.

Accordingly, upon review of the files, motions, and proceedings herein:

**IT IS HEREBY ORDERED** that:

1. The Defendant's Motion to Dismiss all Defendants Except Tommy Thompson is **GRANTED**. All defendants except Tommy Thompson are **DISMISSED** without prejudice;
2. The Plaintiff's Motion for Summary Judgment is **GRANTED** in part. As to claims dated October 1, 1998 to June 6, 2000 that the plaintiff filed, but which were returned unprocessed and without administrative appeal rights, the Secretary is hereby ordered to process those claims in accordance with applicable law;
3. The Plaintiff's Motion for Summary Judgment is **DENIED** in all other respects;
4. The Defendant's Motion for Summary Judgment is **GRANTED** in part. As to all claims other than those dated October 1, 1998 to June 6, 2000 that the plaintiff filed, but which were returned unprocessed and without administrative appeal rights, the plaintiff's Complaint is

**DISMISSED** without prejudice; and

5. The Clerk of Court shall enter judgment as follows:

> **IT IS HEREBY ORDERED, ADJUDGED, and DECREED** that the Secretary shall process, in accordance with applicable law, the plaintiff's claims dated October 1, 1998 to June 6, 2000 that the plaintiff filed, but which were returned unprocessed and without administrative appeal rights.

DATED: ~~September~~ Oct 2, 2002

JOAN E. LANCASTER
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*